UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                           2:10-cr-107-FtM-29DNF

LEROY THOMAS

_____

**OPINION AND ORDER**

On January 14, 2011, United States Magistrate Judge Douglas N. Frazier submitted a Report and Recommendation (Doc. #31) to the Court recommending that Defendant's Substitute Motion to Suppress Evidence (Doc. #22) be denied. Defendant filed Objections (Doc. #32) on January 28, 2011. No response to the objections has been filed by the government, and the time to file such a response has expired.

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Powell, 628 F.3d 1254, 1256 (11th Cir. 2010). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also United States v. Farias-Gonzalez, 556 F.3d

1181, 1184 n.1 (11th Cir. 2009). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994). A district court may not reject the credibility determinations of a magistrate judge without personally rehearing disputed testimony from the witness. Powell, 628 F.3d at 1256-58.

**II.**

The procedural history of the case and the factual findings set forth in the Report and Recommendation (Doc. #31, pp. 1-7) are well supported in the record and are adopted by the Court. The Court summarizes the material facts as follows:

On May 11, 2010, a state Search Warrant for 2723 Market Street, Fort Myers, Florida was signed by a state circuit court judge. The Search Warrant authorized the search of 2723 Market Street (the Residence) and "any persons found therein and or involved in this investigation . . .", Gov. Exh. 1, p. 3, for cocaine, drug paraphernalia, drug records, drug proceeds, illegally possessed firearms, and indicia of ownership and control, Gov. Exh. 1, p. 2. The Search Warrant did not describe the contours of "this investigation" or identify any specific person "involved in this

investigation." The Search Warrant stated that it incorporated the probable cause affidavit, but the affidavit is not in the record of the suppression hearing and there was no evidence that it accompanied the Search Warrant.

Two days later, on May 13, 2010, the Fort Myers Police Department executed the Search Warrant at the Residence.[1] The operational plan was formulated by Detective Eric Gutridge (Detective Gudtridge), the detective in control of the execution of the Search Warrant. Detective Gutridge debriefed his team and instructed that any person associated with the Residence or the investigation needed to be taken prior to the execution of the Search Warrant.

Detective Candice Petaccio (Detective Petaccio) began "pre-warrant surveillance" at the Residence at approximately 2:30 p.m. in anticipation of a SWAT Team's subsequent arrival to make entry into the Residence pursuant to the Search Warrant. Shortly thereafter Detective Petaccio observed Michael Thomas, defendant's son, enter a green mini-van which was in the driveway of the Residence and drive away. Detective Petaccio did not see Michael Thomas leave the Residence, but it is a reasonable inference that Michael Thomas had been an occupant of the Residence. Detective Petaccio followed the green mini-van, and immediately radioed for

---

[1]Defendant's Objections asserts that the Search Warrant was executed on May 11, 2010, the same day it was issued. (Doc. #32, p. 2.) That position is not supported by the record.

other officers to stop that vehicle and detain Michael Thomas because he was a target of the investigation and the SWAT Team was on the way to execute the Search Warrant. Based upon Detective Petaccio's instruction, the officers stopped the green mini-van by a gas station approximately three and one-half blocks from the Residence and detained Michael Thomas.[2] There is no evidence that Michael Thomas was aware that a search warrant was going to be executed at the Residence.

Detective Petaccio returned to her surveillance, and observed a black Nissan arrive at the Residence. Detective Petaccio observed defendant Leroy Thomas exit the Residence and get into the front passenger seat of the Nissan. At approximately 3:18 p.m. the Nissan left the Residence. Detective Petaccio followed, and immediately instructed other officers to stop the Nissan. Before the officers could make the stop, the vehicle stopped on its own and at approximately 3:20 p.m. defendant exited the Nissan and walked toward the gas station and away from the Residence. At approximately 3:21 p.m., based on Detective Petaccio's instruction, Officer Michael Tomacelli approached and detained defendant Leroy Thomas. Defendant was patted down, handcuffed, and placed in another officer's police vehicle. Defendant was not told why, other than perhaps that there was a "pending investigation." The

---

[2]The legality of this detention is not before the Court. Michael Thomas was eventually brought back to the Residence after the search was executed by the SWAT Team.

detention occurred near the gas station, a little more than three blocks from the Residence, and the Residence was not visible from the detention location. Defendant was stopped and detained for "investigative purposes" and safety reasons because he was the main target of the investigation, was believed to be the homeowner, had recently left the Residence, and the SWAT Team had not yet arrived at the Residence. The Nissan went to the gas station, then left the area. There is no evidence that defendant was aware that a search warrant was about to be executed at the Residence.

At approximately 3:36 p.m., the SWAT Team arrived at the Residence. A one-block perimeter around the Residence was set up to prevent people from entering or leaving the area. The SWAT Team executed the Search Warrant, and cleared the Residence. After being detained for more than fifteen minutes, defendant was returned to the Residence, and brought inside. Detective Gutridge read the Search Warrant and Miranda[3] warnings to defendant, who then made incriminating statements.

### III.

Defendant argues that his detention was unlawful, and that his subsequent statements must be suppressed as a fruit of the unlawful detention. The Report and Recommendation rejected the first argument, and therefore did not address the second.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

It is not disputed that the detention of defendant was a "seizure" within the meaning of the Fourth Amendment. Additionally, the government has not asserted any level of suspicion which would have justified defendant's detention, i.e., the government has not asserted that defendant was detained based upon either probable cause or reasonable suspicion. Finally, there is no assertion that the detention was consensual.

The government puts forth two arguments in support of defendant's detention. First, the government argues that the Search Warrant specifically authorized the search of any person involved in the officers' investigation, which included defendant. (Doc. #21, pp. 10-11.) Second, the government argues that even in the absence of specific authorization in the Search Warrant, a search warrant inherently provided the officers with the ability to detain defendant under the facts of the case. (Doc. #21, pp. 4-10.)

The Supreme Court has often stated that the ultimate touchstone of the Fourth Amendment is reasonableness. Michigan v. Fisher, 130 S. Ct. 546, 548 (2009). In determining whether a search or seizure is reasonable, the Supreme Court has begun with history, noting that "[t]he immediate object of the Fourth Amendment was to prohibit the general warrants and writs of assistance that English judges had employed against the colonists." Virginia v. Moore, 553 U.S. 164, 168-69 (2008)(citations omitted).

"When history has not provided a conclusive answer, we have analyzed a search or seizure in light of traditional standards of reasonableness 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"  Id. at 171 (citation omitted.)  With these general principles in mind, the Court addresses, and rejects, both of the government's arguments.

**A.   Search Warrant Language**

The government is certainly correct that the Search Warrant authorized the search of the Residence, persons found within the Residence, and persons "involved in this investigation."  More specifically, the Search Warrant stated:

> You, Detective Eric Gutridge, and/or any other Fort Myers Police Department Officer or Detective, are hereby **commanded to search the location described** and named above being in Lee County, Florida, serving this Warrant and **making the search of said location and any persons found therein and or involved in this investigation** in the daytime or nighttime, . . . and if the property above described is found there, to seize it and arrest all persons in the unlawful possession thereof, . . .

Gov. Exh. 1, p. 3, emphasis added.  The difficulty with the government's argument is that, at least when applied to such persons not found in the Residence, the Search Warrant authorization to search persons "involved in this investigation" is clearly a violation of the Fourth Amendment.

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, *and the persons or things to be seized*." U.S. Const. amend. IV (emphasis added). "The point of the Fourth Amendment's particularity requirement is to protect individuals from being subjected to general, exploratory searches." United States v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007)(citation omitted). The Supreme Court has often stated that this constitutional requirement protects against "the use of general warrants as instruments of oppression." Stanford v. Texas, 379 U.S. 476, 482 (1965). As the Eleventh Circuit has stated:

> The requirement that warrants particularly describe the place to be searched and the things to be seized makes general searches under them impossible. A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad. The resulting general search is unconstitutional. In order to deter such warrants and searches, the Court has held that any evidence so seized must be excluded from the trial of the defendant.

United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000)(citations omitted).

Even if the Search Warrant incorporated the affidavit and the affidavit accompanied the warrant, as required by Groh v. Ramirez, 540 U.S. 551, 557-58 (2004), it would still constitute an unconstitutional general warrant. The Search Warrant purported to authorize law enforcement officers to seize and search persons who

were involved in this investigation without defining in any fashion the investigation or the persons or how they were "involved," and without even limiting the authority to "involved" persons at or near the Residence. The Search Warrant clearly constituted a general warrant as to "persons . . . involved in this investigation" which violated the Fourth Amendment.

**B. Inherent Authority Pursuant to Search Warrant**

While the execution of a valid search warrant carries with it the inherent authority to detain certain persons under certain circumstances while the premises are being searched, there is no binding precedent which allows the detention of a person in the circumstances of this case. The validity of the detention in this case turns largely on the extension of principles set forth in three Supreme Court cases. The Court finds that an extension is not appropriate in the circumstances of this case.

The leading case is <u>Michigan v. Summers</u>, 452 U.S. 692 (1981). In <u>Summers</u> a person was descending the front steps of a residence as law enforcement officers were about to execute a search warrant at the residence. The officers prevented the person from leaving, detaining him while the residence was searched. After finding narcotics in the residence and determining the person owned the residence, the officers placed him under arrest. The Supreme Court found that the dispositive issue was "whether the officers had the authority to require him to re-enter the house and to remain there

while they conducted their search." Summers, 452 U.S. at 695. The Court would later summarize its holding as follows:

> In Michigan v. Summers, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), we held that officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted. Such detentions are appropriate, we explained, because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial. We made clear that the detention of an occupant is surely less intrusive than the search itself, and the presence of a warrant assures that a neutral magistrate has determined that probable cause exists to search the home. Against this incremental intrusion, we posited three legitimate law enforcement interests that provide substantial justification for detaining an occupant: preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search, as detainees' self-interest may induce them to open locked doors or locked containers to avoid the use of force.

Muehler v. Mena, 544 U.S. 93, 98 (2005)(internal quotation marks and citations omitted). In a footnote, Summers discussed the fact that the person was not literally in the house when he was first detained. "We do not view the fact that respondent was leaving his house when the officers arrived to be of constitutional significance. The seizure of respondent on the sidewalk outside was no more intrusive than the detention of those residents of the house whom the police found inside." Summers, 452 U.S. at 702 n.16.

In Muehler, the Court found that detaining an occupant of a residence in handcuffs while the residence was searched was consistent with Summers. The Court stated: "An officer's authority

to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." Muehler, 544 U.S. at 93. The detention for the duration of the search was found to be reasonable under Summers because a warrant existed to search the residence and Mena was an occupant of that residence at the time of the search. Id. at 98. Further, the Court stated that "[i]nherent in Summers' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." Id. at 98-99.

In L.A. County v. Rettele, 550 U.S. 609 (2007), after discussing Summers and Muehler, the Supreme Court summarized: "In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search. The test of reasonableness under the Fourth Amendment is an objective one. Unreasonable actions include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." Id. at 614. Additionally, the Court stated that "[w]hen officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated." Id. at 616.

The Eleventh Circuit has not had many occasions to apply Summers to persons leaving a residence about to be searched

pursuant to a search warrant. In <u>United States v. Young</u>, 909 F.2d 442, 446-47 (11th Cir. 1990) the Court agreed with the district court that <u>Summers</u> provided officers executing a search warrant with authority to detain an occupant 15 or 20 yards from the residence she had just left.[4] In <u>United States v. Sears</u>, 139 F. App'x 162 (11th Cir. 2005) law enforcement officers stopped defendant's vehicle and detained defendant about 100 feet from his residence as the officers were getting ready to execute a narcotics search warrant. Citing <u>Summers</u>, the Court rejected defendant's claim that the officers needed probable cause to stop the vehicle independent of the search warrant. "Because the officers had a valid warrant to search Sears' home, they had a basis to detain him during the search." <u>Sears</u>, 139 F. App'x at 165.

Both the Report and Recommendation and the government recognize that as an unpublished opinion <u>Sears</u> is not binding precedent, but only has persuasive value. This is clearly correct, as the Eleventh Circuit specifically stated in <u>United States v. Tamari</u>, 454 F.3d 1259, 1262 n.4 (11th Cir. 2006). The

---

[4]The Eleventh Circuit disagreed with the district court that a second search warrant was required to search the former occupant. The Court found ample probable cause to believe the person was fleeing with evidence or contraband. <u>Young</u>, 909 F.2d at 446. In this case, the government does not assert that officers possessed probable cause to believe Leroy Thomas had left the residence with evidence or contraband. Additionally, the government does not assert even reasonable suspicion of such conduct by Leroy Thomas, which would have been an independent, lawful reason for the stop. <u>United States v. Nunez</u>, 455 F.3d 1223, 1226 (11th Cir. 2006).

persuasiveness of Sears as to the issue now before the Court is clouded by the Eleventh Circuit's interpretation of the issue it decided in Sears. The issue in Tamari was whether the search warrant authorized agents to search vehicles arriving on the subject property after the search had already begun. The Eleventh Circuit stated: "We lack published authority in this Circuit as to whether a valid search warrant authorizing the search of vehicles on the subject property encompasses the search of a vehicle arriving on that property during the course of the search." Footnote 4 then stated "We answered this question in the affirmative in United States v. Sears, 139 Fed. App'x 162, 166 (11th Cir. 2005). As an unpublished opinion, however, Sears lacks precedential authority and does not bind this Court. . . ." If that was the holding in Sears, it has little impact on the issue now before the Court.

Nonetheless, Sears did rely upon United States v. Cochran, 939 F.2d 337 (6th Cir. 1991), and adopted its position that "no constitutional violation occurs when officers who are preparing to serve a valid search warrant stop and detain an individual who is in the process of leaving the premises to be searched. That the stop does not occur on the premises to be searched is irrelevant so long as the officers detain the individual as soon as practicable after his departure." Sears, 139 F. App'x at 166. The Court is

unpersuaded by the "as soon as practicable" standard, at least as applied to the facts in this case.

Detaining a person in or near a residence as a search warrant is about to be executed is objectively reasonable, as <u>Summers</u> clearly held. Detaining a person who has left the residence without any inkling of the pending search warrant execution, has traveled by vehicle over three blocks away, is not in sight of the residence to be searched, gave no indication of any intent to return to the residence, and for whom the officers lack any level of suspicion which would otherwise justify a stop or detention, is not reasonable under <u>Summers</u>. Even if the stop in this case was "as soon as practicable," it was unreasonable because it served none of the purposes articulated in <u>Summers</u> as justifying a detention not otherwise authorized by law.

Because Leroy Thomas had already exited the Residence and left the vicinity, the intrusive nature to the officer's stop and detention on the street was much greater than in <u>Summers</u>. <u>See</u> <u>United States v. Sherrill</u>, 27 F.3d 344, 346 (8th Cir. 1994). Because Leroy Thomas was unaware of the search warrant, the officers had either no interest in preventing flight, <u>Sherrill</u>, 27 F.3d at 346, or a "far more attenuated" interest, <u>United States v. Edwards</u>, 103 F.3d 90, 94 (10th Cir. 1996). Unlike <u>Summers</u>, the "streetside detention played no part in facilitating the orderly completion of a search being conducted three blocks away."

Edwards, 103 F.3d at 94. Additionally, there were no reasonable officer safety issues as contemplated by Summers which were alleviated by the stop and detention in this case. The prosecutor had to "pull teeth" to get the officer to even mention officer safety (Doc. #29, pp. 27-28), and her examples of such concerns were not objectively reasonable under the circumstances of this case. There was no way Leroy Thomas could have affected the evidence at the Residence from three blocks away in the manner which the officer stated was of concern. (Doc. #29, pp. 28-29.)

While Thomas could have been armed, as the officer speculated, there was no factual basis presented for this speculation and Thomas was going *away* from the Residence until stopped by the officers. A one block perimeter was set up around the Residence to prevent anyone, including Thomas, from getting close to the Residence. Unlike several cases which have purported to extend the geographic limits of Summers, nothing about Leroy Thomas's behavior justified the stop or detention. See, e.g., United States v. Bullock, ___ F.3d ___, No. 10-2238, 2011 WL 292021, *12, *16-17 (7th Cir. 2011)(finding probable cause justified stop and suspected criminal activity justified detention); United States v. Cavazos, 288 F.3d 706, 711-12 (5th Cir. 2002)(finding stop two blocks from residence justified under Summers after occupant approached the police car, peered at the officers as if conducting counter-

surveillance, then drove his truck toward the officers' vehicle in a threatening manner).

In sum, the Court finds that the detention of defendant Thomas under the circumstances of this case was not within the principles set forth in Summers or its progeny, and that those principles may not be extended to encompass the detention in this case. The officers conduct in stopping and detaining the defendant more than three blocks away from the site of the anticipated search warrant execution was, under the undisputed facts in this case, unreasonable.

**C. Exclusionary Rule**

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment or derived from the violation cannot be used in a criminal proceeding against the victim of the illegal search and seizure. United States v. Calandra, 414 U.S. 338, 347 (1974); Segura v. United States, 468 U.S. 796, 804 (1984). The "fruits" of a Fourth Amendment violation include confessions or statements of the accused obtained during an illegal arrest and detention. United States v. Crews, 445 U.S. 463, 470 (1980)(citations omitted).

The question of whether the exclusionary rule is appropriate in a particular context is a separate issue from the question of whether the Fourth Amendment has been violated by the police conduct. Arizona v. Evans, 514 U.S. 1, 12-13 (1995); Hudson v.

Michigan, 547 U.S. 586, 592 (2006). Thus, the fact that a Fourth Amendment violation has occurred does not necessarily mean that the exclusionary rule applies. Herring v. United States, 129 S. Ct. 695, 700 (2009)(citing Illinois v. Gates, 462 U.S. 213, 223 (1983)). Because the use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution, Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 361 (1998)(citations omitted), application of the exclusionary rule "has been restricted to those instances where its remedial objectives are thought most efficaciously served." Evans, 514 U.S. at 11. "Moreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its 'substantial social costs.'" Scott, 524 U.S. at 363 (citing United States v. Leon, 468 U.S. 897 (1984)); See also Hudson, 547 U.S. at 594-99.

In this case, the Eleventh Circuit has already found that suppression of evidence for such a violation is warranted. Travers, 233 F.3d at 1329. There is no evidence of any independent source for defendant's custodial statements, no suggestion that discovery would have been inevitable by lawful means, and no indication that the connection between the unlawful conduct and statements was sufficiently attenuated. The Court concludes that the statements made by defendant Leroy Thomas while

-17-

in custody after his detention must be suppressed from use in the government's case in chief.

After reviewing the Report and Recommendation and the transcript of the evidentiary hearing, the Court fully agrees with the findings of fact but disagrees with the conclusions of law made by the magistrate judge. Accordingly, the Court declines to adopt that portion of the Report and Recommendation and will grant the motion to suppress.

Accordingly, it is now

**ORDERED**:

1. The Magistrate Judge's Report and Recommendation (Doc. #31) is **ACCEPTED AND ADOPTED IN PART AND REJECTED IN PART**. The factual findings of the Report and Recommendation are accepted and adopted, but the legal conclusions are not.

2. Defendant's Substitute Motion to Suppress (Doc. #22) is **GRANTED**, and the statements made by defendant Leroy Thomas while in custody on May 13, 2010, following his detention are suppressed from use in the government's case in chief.

**DONE AND ORDERED** at Fort Myers, Florida, this __28th__ day of February, 2011.

_John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:
U.S. Magistrate Judge
Counsel of Record